**GEOFFREY V. WHITE (SBN. 068012)**
**LAW OFFICE OF GEOFFREY V. WHITE**
351 California St., Suite 1500
San Francisco, California 94104
Telephone: (415) 362-5658
Facsimile: (415) 362-4115
Email: gvwhite@sprynet.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID BARBOZA,**<br><br>Plaintiff,<br><br>v.<br><br>**CALIFORNIA ASSOCIATION OF PROFESSIONAL FIREFIGHTERS,** a California corporation; **CALIFORNIA ASSOCIATION OF PROFESSIONAL FIREFIGHTERS LONG-TERM DISABILITY PLAN;** and **CALIFORNIA ADMINISTRATION INSURANCE SERVICES, INC.,** a California corporation,<br><br>Defendants. | **Case No. CIV S-08-0519-FCD-GGH**<br><br>**PLAINTIFF'S STATEMENT OF ADMITTED AND DISPUTED FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Date: June 12, 2009**<br><br>**Time: 10:00 a.m.**<br><br>**Court: No. 2, 15th Floor**<br><br>**Hon. Frank C. Damrell, Jr.** |

Pursuant to Civil Local Rule 56-260, Plaintiff David Barboza submits the following Statement of Admitted and Disputed Facts in Opposition to Defendants' Motion for Summary Judgment filed on May 15, 2009.

| Defendants' Undisputed Facts | Plaintiff's Position and Supporting Evidence |
|---|---|
| 1. CAPF offers a Long-Term Disability Plan to eligible firefighters in California. Defendant California Insurance Administration Services, Inc. ("CAISI") is the independent third-party administrator for the CAPF Plan. | 1. Admitted. |

| Defendants' Undisputed Facts | Plaintiff's Position and Supporting Evidence |
|---|---|
| 2. Prior to March, 2006, Barboza was a firefighter for the City of Tracy and a participant in the CAPF Plan. Barboza held the rank and position of Battalion Commander, and in that position did not routinely respond to fires. In or about December of 2005, the City decided to eliminate the Battalion Commander position. By letter dated March 2, 2006, Barboza was given an official notice of layoff from the City Manager. According to the letter, Barboza had four choices. He could retire if eligible by virtue of his age and years of service, accept a layoff effective March 21, 2006, resign from the Tracy Fire Department, or, if determined by the Personnel Manager to be qualified, accept a demotion to Fire Captain. | 2. Admitted. |
| 3. Barboza was too young to retire, and did not want to accept a layoff or resign. | 3. Admitted. |
| 4. Barboza had injured his back in 1993 or 1994, and filed a claim for benefits under the Workers' Compensation system. He was evaluated by Dr. Hope and his disability was found to be permanent and stationary with permanent work restriction for "no very heavy lifting." He was able to continue work and received regular treatments from a chiropractor, but his back never got better. | 4. Admitted. |
| 5. In 1999, he was promoted to Division Chief, but the pain from his prior back injury was getting worse. The position changed to Battalion Commander in 2003, a position that was primarily a supervisory one involving mostly desk work. Despite this change, the pain in his neck, back and shoulders became more of a problem in 2003-2004. The pain was spreading down his back and he developed peripheral neuropathy in his legs, which caused pain, numbness, and tingling. In 2005, he was rated "marginal" in his mandatory agility testing. | 5. Admitted. |
| 6. Tracy Fire Chief Chris Bosch was also concerned that Barboza was not physically qualified to accept the Fire Captain position (an option in the City's March 2, 2006 letter). He called Barboza to a meeting in mid-March, 2006, to ask Barboza whether he | 6. Disputed. Chief Bosch told Plaintiff Barboza he was concerned whether he could do the job safely, without further injuring himself or hurting anyone else. [CAPF 121]. |

| | |
|---|---|
| could safely do the Fire Captain job physically. Barboza told him he did not know if he could safely perform the job physically, and asked if there were any other positions available. Chief Bosch advised him there were not, and sent Barboza to Dr. Patel, to determine if he was physically qualified to perform the duties of the position. | |
| 7. Barboza was to report for work as a Fire Captain on or about March 21, 2006. | 7. Disputed. [CAPF 121]. |
| 8. Barboza was evaluated by Dr. Patel on March 27, 2006, and was found to be physically unqualified for the Fire Captain position due to the previously-sustained back injury and peripheral neuropathy. Dr. Patel placed permanent work restrictions on Barboza that prevented him from repetitive lifting above 40 pounds, repetitive bending at the waist, repetitive stooping, and he could only occasionally work at height or climb a ladder. | 8. Admitted. |
| 9. These restrictions were significantly more limiting than Dr. Hope's 1994 restriction of "no very heavy lifting." The City placed Barboza on paid administrative leave the following day while they decided what to do with him. After two months of paid administrative leave the City gave Barboza a disability retirement from the position of Fire Captain. | 9. Disputed. Dr. Patel's restrictions were more limiting because he included restrictions for Barboza's lower back and peripheral neuropathy, which were found not to be work-related. [CAPF 021-023, Declaration of Maureen Burns at Par. 3]. |
| 10. Plaintiff contacted CAISI on or about March 29, 2006 to discuss filing a long term disability claim because he was physically unable to perform the duties of Fire Captain. CAISI specifically advised Plaintiff to review the benefits available to him under Labor Code Section 4850, and that any disability claim would be offset by the benefits available to hum under that code section. CAISI also advised Barboza to file a Workers' Compensation claim for cumulative trauma to his back. | 10. Disputed. Barboza told "Bill" on March 29, 2006 that he would be getting 4850 pay until his disability retirement went through, and that his condition was permanent and stationary. [CAPF 0339]. Plaintiff had already filed a "cumulative trauma" Workers Compensation claim. [Decl. of Maureen Burns, Par. 3]. |
| 11. Barboza advised CAISI that he would have his Workers' Compensation attorney file a claim for cumulative trauma and seek benefits under Labor Code Section 4850. In fact, Barboza copies CAISI on a letter to his attorney about that subject, and CAISI believed and understood that Barboza would receive these benefits. | 11. Disputed. Barboza's Workers Compensation attorney filed Workers Compensation claims on his behalf, but Barboza advised CAISI he had no grounds to file for 4850 pay after his disability retirement on May 16, 2006. [CAPF 0007-0008, 043-044, 0338-0339]. |

| Defendants' Undisputed Facts | Plaintiff's Position and Supporting Evidence |
|---|---|
| 12. Barboza eventually did file a claim for Workers' Compensation benefits, and CAPF filed a lien in the Workers' Compensation proceeding. This lien was perfected on December 5, 2006. | 12. Disputed. The Request for Allowance of Lien required that group disability benefits have been paid, and CAPF paid none [CAPF 0038, 0048]. The Compromise & Release recites that no liens were filed. [Decl. of Burns, Exh. 1, Par. 8]. |
| 13. The CAPF Plan specifically provides for an offset for Labor Code Section 4850 benefits (and other income received by the participant), which provide a disabled firefighter like Plaintiff with a year-long leave of absence at fully salary. The CAPF Plan specifies that the offset for any such benefit under Section 4850 applies, even if the participant fails to apply for them and/or waives them, as long as the participant would have been eligible to receive benefits. | 13. Admitted the Plan so provides. [CAPF 0086, Plan §11.5]. Disputed that Plaintiff was eligible for Section 4850 pay after May 16, 2006. |
| 14. Plaintiff was granted the disability retirement by the City effective May 16, 2006. On May 31, 2006, Plaintiff filed a written claim for disability benefits under the CAPF Plan. | 14. Admitted. |
| 15. After receiving Plaintiff's claim, CAISI made several attempts to communicate with Barboza and his Workers' Compensation attorney to discuss the issue of Labor Code Section 4850 benefits, but received no response to numerous letters and telephone messages. | 15. Disputed. CAISI inquired about the status of Plaintiff's Workers Compensation claim, and only told Barboza to consult with his attorney about getting Section 4850 pay. [CAPF 0004, 0006, 0009] |
| 16. CAISI presumed that Plaintiff applied for and was receiving the Section 4850 benefits he was entitled to, and thus there was no immediate need for a determination on his long-term disability claim. | 16. Disputed. CAISI knew from the outset that Plaintiff had been retired for disability since May 16, 2006 and thus was not eligible for Section 4850 benefits. [CAPF 0028, 0006-0007, 043-044, 0338-0339]. The Plan required a decision on Plaintiff's claim within 45 days. [CAPF 0106]. |
| 17. On May 2, 2007, CAPF received a letter from Barboza inquiring why he was not receiving benefits for his claim. | 17. Admitted. |
| 18. The May 2, 2007 letter was the first time since October, 2006, that CAPF had been contacted by Barboza, and CAISI believed Barboza was receiving Section 4850 benefits. | 18. Disputed. See response to Par. 16, above. |

| Defendants' Undisputed Facts | Plaintiff's Position and Supporting Evidence |
|---|---|
| 19. On May 18, 2007 CAISI denied Plaintiff's claim for disability benefits. | 19. Admitted. The denial letter makes no mention of Section 4850 benefits as a ground for denial. [CAPF 0004-0005]. |
| 20. The Plan language requires an additional appeal to the CAPF Executive Board, and then a 30-day period of good-faith negotiations to work out any disputes prior to filing suit. | 20. Admitted. |
| 21. After the appeal hearing, the Claims Committee had resolved to accept Plaintiff's disability claim and pay benefits subject to the offsets required under the CAPF Plan, which included payments under Labor Code Section 4850 that Plaintiff was entitled to, and any other income and/or workers compensation settlement amounts Plaintiff received. | 21. Disputed. The Plan Attorney was directed to "research potential benefits and settlement for one year of disability due to 4850 not being used for the first year." [CAPF 0341]. |
| 22. In the event CAPF is not included in settlement discussions, the CAPF Plan, pursuant to Sections 11 and 12 of the Plan, will take an offset of the entire settlement, even if that settlement is characterized as a buy-out of future medical payments. | 22. Disputed. Nothing in the Plan permits an offset for Workers Compensation benefits due to injuries incurred prior to the date of Total Disability under the Plan. [CAPF 0079-0101]. |
| 23. Barboza signed a Benefit Election Form expressly acknowledging his obligation to repay any amounts received from any Workers' Compensation settlement, and that these settlement proceeds would be taken as an offset to any benefits payable under the Plan. | 23. Disputed. Barboza only consented to offsets for Workers Compensation benefits for his March, 2006 injury. [CAPF 0031]. |
| 24. The monthly benefit that Mr. Barboza would be entitled to under the CAPF Plan is $2,550, which represents 80% of his base salary minus his disability retirement pay, which is 50% of his base salary. | 24. Disputed. The CAISI significantly reduced Plaintiff's benefit calculations. [CAPF 0034]. The Plan requires use of PERS salary calculations. [CAPF 0059]. PERS calculated 50% of Plaintiff's base salary as $4,966.60/mo. [Decl. of D. Barboza, Exh. 1, filed herewith], so his net benefit from CAPF is $2,979.96/mo. |

/////////

/////////

/////////

Plaintiff Barboza also contends that Defendants' Motion for Summary Judgment is defeated by the following additional material facts allegedly in dispute:

| Plaintiff's Disputed Facts | Supporting Evidence |
|---|---|
| 1. The Plan's initial denial of benefits failed to explain what evidence Barboza needed to support his claim for benefits. | 1. [CAPF 0005]. |
| 2. Barboza filed his Appeal to the Plan on November 16, 2007. | 2. [CAPF 0112]. |
| 3. On April 21, 2008, the Plan Attorney notified Barboza that his Appeal had been denied for the first year of benefits, by offsetting Section 4850 pay for which he was allegedly eligible. | 3. [CAPF 0345]. |
| 4. The Plan's ground for partial denial of the Appeal was a new ground, never mentioned in the Plan's initial denial in May, 2007. | 4. [CAPF 0004]. |
| 5. The Plan has a "structural conflict of interest," because it is self-funded and not insured. | 5. [Complaint, Par. 5]; [Answer, Par. 5]. |
| 6. Barboza received no Workers Compensation Temporary Disability benefits after March, 2006, except for a one-day medical appointment. | 6. [Declaration of Maureen Burns, Exhibit 2, last page]. |
| 7. Barboza's Workers Compensation claim for his 1993 injury was settled on March 1, 1995. | 7. [Declaration of Maureen Burns, par. 2]. |
| 8. Barboza's 2006 Workers Compensation claims were found after medical evaluation to result in no additional Workers Compensation Permanent Disability benefits. | 8. [Declaration of Maureen Burns, par. 3]. |
| 9. Barboza's settlement of his 3 Workers Compensation claims in November, 2008 resulted in payment of the gross amount of $18,000, as a buy-out for the value of his future medical benefits under his 1993 injury, less $2,700 in fees to his attorney. | 9. [Declaration of Maureen Burns, par. 3]. |

Dated: May 26, 2009

Respectfully submitted,

LAW OFFICE OF GEOFFREY V. WHITE

By [signature]
Geoffrey V. White
Attorneys for Plaintiff