UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DAVID BARBOZA,

          Plaintiff,

    v.

CALIFORNIA ASSOCIATION OF
PROFESSIONAL FIREFIGHTERS,
a California corporation;
CALIFORNIA ASSOCIATION OF
PROFESSIONAL FIREFIGHTERS
LONG TERM DISABILITY PLAN;
and CALIFORNIA ADMINISTRATION
INSURANCE SERVICES, INC.,
a California corporation,

          Defendants.

NO. CIV. S-08-519 FCD/GGH

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

    This matter is before the court on (1) plaintiff David Barboza's ("plaintiff") motion for judgment on the administrative record, pursuant to Fed. R. Civ. P. 52 and (2) defendants'[1]

----

[1] Defendants are the California Association of Professional Firefighters ("CAPF"), California Association of Professional Firefighters Long Term Disability Plan (the "CAPF Plan" or "Plan") and the California Administration Insurance Services, Inc. ("CAIS").

1  motion for summary judgment, pursuant to Fed. R. Civ. P. 56.[2]  In

2  this action, brought under the Employee Retirement Income

3  Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, plaintiff seeks

4  recovery of long term disability benefits under the relevant Plan

5  provided by defendant CAPF.  CAPF has agreed to pay plaintiff

6  benefits subject, however, to certain offsets it contends are

7  permissible under the Plan.  Plaintiff disputes the applicability

8  of any offsets and seeks payment of his benefits in full.

9     Before reaching the substantive merits of the parties'

10 motions, the court must address a threshold issue.  In moving for

11 summary judgment, defendants contend, in the first instance, that

12 plaintiff's action should be dismissed for failure to exhaust

13 administrative remedies.  Because the court finds that plaintiff

14 has failed to exhaust the CAPF Plan's administrative remedies,

15 and plaintiff has no valid excuse for failing to do so, the court

16 does not reach the merits of the parties' dispute regarding the

17 amount of benefits due under the policy.

18    For the reasons set forth below, defendants' motion for

19 summary judgment is GRANTED on the basis that plaintiff failed to

20 exhaust his administrative remedies prior to bringing the instant

21 suit.  Plaintiff's cross-motion is accordingly DENIED.

22                          **BACKGROUND**

23    CAPF offers a long term disability plan to eligible

24 firefighters in California.  CAIS is the independent third-party

25 administrator for the CAPF Plan.  (Defs.' Reply to Pl.'s Stmt. of

26

27    [2]   Because oral argument will not be of material
   assistance, the court orders these matters submitted on the
28 briefs.  E.D. Cal. L.R. 78-230(h).

Admitted and Disputed Facts in Opp'n to Defs.' MSJ [Docket #29-2], filed June 5, 2009 ["UF"],[3] ¶ 1.)  Prior to March 2006, plaintiff was a firefighter for the City of Tracy and a participant in the CAPF Plan.  Plaintiff held the rank and position of Battalion Commander and, in that position, did not routinely respond to fires.  In or about December 2005, the City decided to eliminate the Battalion Commander position.  By letter dated March 2, 2006, plaintiff was given an official notice of layoff from the City Manager.  According to the letter, plaintiff had four choices: (1) he could retire if eligible by virtue of his age and years of service; (2) he could accept a layoff effective March 21, 2006; (3) he could resign from the Tracy Fire Department, or (4) if determined by the Personnel Manager to be qualified, he could accept a demotion to Fire Captain.  (UF ¶ 2.)

Plaintiff was too young to retire and did not want to accept a layoff or resign.  (UF ¶ 3.)  He was also not physically qualified to accept the Fire Captain position.  Plaintiff injured his back in 1993 or 1994 and filed a claim for benefits under the workers' compensation system.  His disability was found to be permanent and stationary, and he was given a permanent work restriction for "no very heavy lifting" by his doctor.  (UF ¶ 4.)  Plaintiff was able to continue work, and he received regular treatments from a chiropractor, but his back never got better.  (Id.)  In 1999, he was promoted to Division Chief, but the pain from his prior back injury was getting worse.  (UF ¶ 5.)  The position changed to Battalion Commander in 2003, a position that

---

[3]   Unless otherwise noted, the court finds the following facts undisputed.

1   was primarily a supervisory one involving mostly desk work.

2   Despite this change, the pain in plaintiff's neck, back and

3   shoulders became more of a problem in 2003-2004.  (<u>Id.</u>)  The pain

4   was spreading down his back and he developed peripheral

5   neuropathy in his legs, which caused pain, numbness and tingling.

6   In 2005, he was rated "marginal" in his mandatory agility

7   testing.  (<u>Id.</u>)

8        In early March 2006, Tracy Fire Chief Bosch called plaintiff

9   in for a meeting to inquire whether in light of his physical

10  condition, plaintiff could safely do the job of Fire Captain.

11  (UF ¶ 6.)  Plaintiff told Bosch he did not know if he could

12  safely perform the job physically and asked if there were any

13  other positions available.  Chief Bosch said that there were not

14  and sent plaintiff to Dr. Patel to determine if he was physically

15  qualified to perform the duties of the Fire Captain position.

16  (<u>Id.</u>)

17       Plaintiff reported to work as a Fire Captain on or about

18  March 21, 2006.  (UF ¶ 7.)  He was subsequently evaluated by Dr.

19  Patel on March 27, 2006.  Dr. Patel found plaintiff physically

20  unqualified for the Fire Captain position due to his previously

21  sustained back injury and peripheral neuropathy.  Dr. Patel

22  placed permanent work restrictions on plaintiff that prevented

23  him from repetitive lifting above 40 pounds, repetitive bending

24  at the waist, and repetitive stooping, and he could only

25  occasionally work at height or climb a ladder.  (UF ¶ 8.)

26       The City placed plaintiff on administrative leave the

27  following day.  (UF ¶ 9.)  After two months of paid

28  administrative leave, the City gave plaintiff a disability

4

1    retirement from the position of Fire Captain.  (Id.)

2         On or about March 29, 2006, plaintiff contacted CAIS to

3    discuss filing a long-term disability claim because he was

4    physically unable to perform the duties of Fire Captain.  CAIS

5    advised plaintiff to review the benefits available to him under

6    California Labor Code § 4850, as CAIS understood plaintiff's

7    acceptance of retirement benefits may preclude him from receiving

8    benefits under Section 4850, and that any long-term disability

9    claim made under the CAPF Plan would be offset by the benefits

10   available to him under that code section.[4]  (UF ¶ 10.)  CAIS also

11   advised plaintiff to file a workers' compensation claim for

12   cumulative trauma to his back.  (Id.)  Defendants assert

13   plaintiff advised CAIS that he would have his workers'

14   compensation attorney file a workers' compensation claim for

15   cumulative trauma and seek benefits under Section 4850.  As such,

16   defendants maintain they believed that plaintiff would receive

17   these benefits.  (UF ¶ 11.)  Plaintiff contends, to the contrary,

18   that he told CAIS that he would receive Section 4850 pay only

19   until his disability retirement went through, as his physical

20   condition was permanent and stationary, thereby precluding him

21   from receiving Section 4850 benefits.  (Id.)  Plaintiff filed a

22

23        [4]    The CAPF Plan specifically provides for an offset for
     Section 4850 benefits, which provide a disabled firefighter like
24   plaintiff with a year-long leave of absence at full salary.  The
     CAPF Plan states that the offset for any such benefits under
25   Section 4850 applies, even if the participant fails to apply for
     the benefits and/or waives them, as long as the participant would
26   have been eligible to receive the benefits.  (UF ¶ 13.)
     Plaintiff concedes the Plan so provides but disputes that he was
27   eligible to receive the pay after May 16, 2006 when he received
     his disability retirement.  Because the court does not reach the
28   substantive merits of plaintiff's benefits' claim herein, it does
     not resolve this legal issue.

workers' compensation claim, and CAPF subsequently filed a lien in the workers' compensation proceeding.  Plaintiff disputes that defendants' lien was properly filed and perfected.  (UF ¶ 12.)[5]

Plaintiff did not pursue the statutory benefits available under Section 4850 and, instead, accepted retirement due to permanent disability.  He was granted disability retirement by the City effective May 16, 2006.  On May 31, 2006, he filed a written claim for disability benefits under the CAPF Plan.  (UF ¶ 14.)  After receiving plaintiff's claim, CAIS asserts it made several attempts to communicate with plaintiff and his attorney to discuss the issue of Section 4850 benefits, but it received no response.  As a result, CAIS presumed that plaintiff had applied for and was receiving the Section 4850 benefits it believed he was entitled to, and thus, there was no immediate need for a determination on plaintiff's long-term disability claim.  (UF ¶s 15-16.)  Plaintiff contends CAIS's presumption was unreasonable since it knew plaintiff had been retired for a permanent disability since May 16, 2006, which plaintiff contends made him ineligible for Section 4850 benefits.  Plaintiff asserts he was entitled under the Plan to a claims' decision within 45 days of filing his claim.  (Id.)

On October 7, 2006, plaintiff faxed a letter to CAIS complaining that he had not been given any explanation for why he was not being paid long-term disability benefits from defendants and requesting payment of his benefits because his injuries were

---

[5]     The parties' various disputes of fact set forth herein are not material to the issue of whether plaintiff exhausted his administrative remedies.  However, these facts are provided to give full context to the parties' relationship.

permanent.  (White Decl. in Supp. of Pl.'s Mot., filed May 8, 2009, Ex. 1 at 0007.)  CAIS responded on October 13, 2006, stating that plaintiff needed to obtain legal advice immediately before allowing his first PERS retirement payment to be deposited in his account, as CAIS believed plaintiff could no longer receive further Section 4850 benefits once he began receiving PERS payments.  (Id. at 0008.)  CAIS attempted to contact plaintiff's attorney to discuss this issue with him as well, but counsel never responded to CAIS.  (Id. at 0008-0009.)

On May 2, 2007, CAPF received a letter from plaintiff inquiring why he was not receiving benefits for his claim.  (UF ¶ 17.)  This was the first time since October 2006 that CAPF had been contacted by plaintiff.  (UF ¶ 18.)  On May 18, 2007, CAIS denied plaintiff's claim for disability benefits on the ground there was "no documentation on file to show that [plaintiff was] disabled from [his] Own Occupation as a chief officer and you were able to work full duty as a Battalion Chief until the city discontinued this position."  (UF ¶ 19; White Decl., Ex. 1 at 0005.)

Plaintiff appealed CAIS's decision on July 31, 2007.  On November 16, 2007, plaintiff submitted additional medical evidence in support of his disability claim.  (Pl.'s Add'l Disputed Facts [Docket #24], filed May 26, 2009 ["ADF"], ¶ 1.)  On February 20, 2008, the Claims Committee of the Board of Directors ("Claims Committee") heard plaintiff's appeal.  Both plaintiff and his attorney attended the hearing.  At the conclusion of the hearing, the Claims Committee took the appeal under submission and advised plaintiff it would issue a decision

forthwith.

On March 6, 2008, two weeks following the appeal hearing and before the Claims Committee rendered its decision, plaintiff filed the instant lawsuit against defendants.  The CAPF Plan, however, required an additional appeal to the CAPF Executive Board and then a 30-day period of good-faith negotiation to work out any disputes prior to filing suit on a claim.  (UF ¶ 20.)

On April 21, 2008, the Claims Committee issued its decision, granting plaintiff's disability claim but paying benefits subject to the offsets permitted by the Plan, which included payments under Section 4850 that plaintiff was entitled to, and any other income and/or workers' compensation settlement amounts plaintiff may receive.  (UF ¶ 21; ADF ¶ 3.)[6]

Thereafter, plaintiff settled his workers' compensation claim with the City through a compromise and release.  He settled this claim without notifying CAPF.  The parties dispute whether CAPF was entitled to participate in the settlement negotiations. Defendants contend that under the provisions of the Plan, CAPF must be a party to and approve of all settlements; in the event it is not included, the Plan provides that CAFP may take an offset of the entire settlement, even if that settlement is characterized as a buy-out of future medical payments.  (UF

---

[6]   The committee indicated that the first 12 months of plaintiff's long term disability benefits would be offset entirely because during that time plaintiff could have applied for and received Section 4850 benefits; the committee stated that under current California law, plaintiff could not be forced to accept a disability retirement prior to exhausting these statutory benefits (citing City of Martinez v. Workers' Comp. Appeals Bd., 85 Cal. App. 4th 601, 620 (2000)).  (White Decl., Ex. 2 at 0345-48.)

¶ 22.)  Defendants assert that despite CAPF's lien and their
attorney specifically advising plaintiff's counsel of these
provisions of the Plan, plaintiff settled his claim with the City
without notifying CAPF.  Thus, defendants argue they may properly
offset plaintiff's benefits by the entire settlement amount of
$18,000.00.  Defendants also emphasize that plaintiff signed a
Benefit Election Form expressly acknowledging his obligation to
repay any amounts received from a workers' compensation
settlement, and that these settlement proceeds would be taken as
an offset to any benefits payable under the Plan.  (UF ¶ 23.)

     Ultimately, defendants argue plaintiff's total benefits
under the CAPF Plan must be reduced by the Section 4850 benefits
he was entitled to receive under California law and the
$18,000.00 workers' compensation settlement, resulting in
benefits owing to plaintiff, at most, in the amount of
$12,600.00.

STANDARD

     Before the substance of an ERISA claim can be heard,
judicial doctrine requires a plaintiff to "avail himself or
herself of a plan's own internal review process before bringing
suit in federal court."  Diaz v. United Agricultural Employee
Welfare Benefit Plan and Trust, 50 F.3d 1479, 1483 (9th Cir.
1995).[7]  The exhaustion requirement "serves several important

---

[7]     Defendants incorrectly assert that failing to meet the
exhaustion requirement precludes this court from exercising
subject matter jurisdiction over the case.  The Ninth Circuit has
recently made clear that the ERISA exhaustion requirement is a
*judicial* doctrine grounded in policy considerations, rather than
a congressionally created jurisdictional requirement establishing
a judicial bar.  See Vaught v. Scottsdale Healthcare Corp. Health
Plan, 546 F.3d 620, 627 n.2 (9th Cir. 2008); Metro. Life Ins. Co.

9

policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise." Id.  Indeed, the Ninth Circuit has repeatedly recognized that federal courts "have the authority to enforce the exhaustion requirement in suits under ERISA, and as a matter of sound policy they should usually do so." Amato v. Bernard, 618 F.2d 559, 568 (9th Cir. 1980).

However, the courts have recognized exceptions to this prudential exhaustion requirement. Vaught, 546 F.3d at 626. For example, "when a plan fails to establish or follow 'reasonable' claim procedures required by ERISA, 'a claimant shall be deemed to have exhausted the administrative remedies available under the plan.'" Id. at 627 (citing 29 C.F.R. § 2560.503-1(*l*)). Likewise, a court "is obliged to exercise its jurisdiction . . . when resort to the administrative route is futile." Id. at 626-27 (citing Amato, 618 F.2d at 568).

Therefore, in deciding whether a plaintiff has exhausted the administrative claims procedures, the court must consider: (1) whether the plaintiff exhausted the remedies available by following the plan's claims procedures; and (2) if the plaintiff did not exhaust the claims procedures, whether the plaintiff is excused from following those procedures because they do not comply with federal regulations or because attempts to follow the

_____

v. Price, 501 F.3d 271, 279 (3d Cir. 2007).

procedures would be futile.  <u>Diaz</u>, 50 F.3d at 1483-86.[8]

**ANALYSIS**

**I.   CAPF Plan Procedure**

Defendants argue plaintiff did not exhaust the administrative remedies provided by the Plan prior to filing the instant suit.  The CAPF Plan outlines the claim procedures in the Summary Plan Description, which also provides the guideline for the appeals process.  In the event that a claimant's initial claim is denied, the claimant may appeal the decision to the Claims Committee.  If the Claims Committee denies the appeal, the claimant can apply for reconsideration to the Executive Board. If a dispute still exists, the claimant must negotiate in good faith with the Plan for a 30-day period prior to filing suit.

Here, plaintiff appealed CAIS's decision to the Claims Committee on July 31, 2007.  On November 16, 2007, he submitted additional medical evidence in support of his disability claim. On February 20, 2008, the Claims Committee heard plaintiff's appeal.  Both plaintiff and his attorney attended the hearing. At the conclusion of the hearing, the Claims Committee took the appeal under submission and advised plaintiff it would issue a decision forthwith.

However, on March 6, 2008, two weeks following the appeal hearing, plaintiff filed the instant lawsuit against defendants.

---

[8]   Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).  The court properly resolves the issue of exhaustion on a motion for summary judgment.  <u>See</u> <u>Sarraf v. Standard Ins. Co.</u>, 102 F.3d 991 (9th Cir. 1996).

Prior to filing suit, plaintiff was required to: (1) wait for the Claims Committee's decision, (2) if dissatisfied, appeal to the Executive Board, and (3) negotiate in good faith for a period of 30-days, if any disputes remained.  Plaintiff did not do so. Thus, by filing suit prior to completing the appeals and negotiation process, plaintiff did not exhaust his administrative remedies prior to filing suit.

## II.   ERISA Procedural Requirements

Plaintiff concedes he did not exhaust the Plan's administrative procedures.  He contends, however, that he is excused from doing so because defendants failed to follow the claims procedures required by ERISA.  See Vaught, 456 F.3d at 627.  As such, plaintiff maintains his administrative remedies may be "deemed exhausted" pursuant to 29 C.F.R. § 2560.503-1(*l*).[9]

Title 29 C.F.R. § 2560.503-1(i)(3), *inter alia*, outlines certain claims procedures required by ERISA specifically for "disability claims."  In the first instance, subsection (i)(3) provides that the "general" timing standards for notification of benefits determinations on appeal, outlined by subsection (i)(1), apply to disability claims.  Subsection (i)(3) modifies subsection (i)(1) in one respect:  it reduces the notification period under subdivision (i)(1)(i) to 45 days instead of 60 days. Subsection (i)(3) provides in pertinent part:

> "[e]xcept as provided in [the case of a "multi-employer plan], claims involving disability benefits (whether the

---

[9]    Title 29 C.F.R. 2560.503-1(*l*) provides:  "In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan."

plan provides for one or two appeals) shall be governed by
paragraph (i)(1) of this section, except that a period of 45
days shall apply instead of 60 days for purposes of
[Subdivision (i)(1)(i)]."

29 C.F.R. 2560.503-1(i)(3).

Plaintiff argues defendants had, at most, 90 days to
complete the appeals process pursuant to subsection (i)(3) and
subdivision (i)(1)(i).[10]  Plaintiff appealed CAIS's decision to
the Claims Committee on July 31, 2007.  However, the Claims
Committee did not hear plaintiff's appeal until February 20,
2008.  Therefore, plaintiff argues defendants did not follow the
claims procedures required by ERISA because more than 45 days had
passed before the Claims Committee made its determination.

Defendants argue, to the contrary, that their decision was
timely because the CAPF Plan is subject to the requirements
outlined in subdivision (i)(1)(ii), rather than subdivision
(i)(1)(i) relied on by plaintiff.  Subdivision (i)(1)(ii)
provides:

> In the case of a plan with a committee or board of trustees
> designated as the appropriate named fiduciary that holds
> regularly scheduled meetings at least quarterly, paragraph
> (i)(1)(i) of this section shall not apply, and, . . . the
> appropriate named fiduciary shall instead make a benefit
> determination no later than the date of the meeting of the
> committee or board that immediately follows the plan's
> receipt of a request for review, unless the request for
> review is filed within 30 days preceding the date of such
> meeting. In such case, a benefit determination may be made
> by no later than the date of the second meeting following
> the plan's receipt of the request for review. If special
> circumstances (such as the need to hold a hearing, if the
> plan's procedures provide for a hearing) require a further
> extension of time for processing, a benefit determination

---

[10]    Plaintiff asserts defendants were entitled to, at most,
45 days to complete the Claims Committee hearing and, at most, 45
days to complete the Executive Board reconsideration pursuant to
subsection (i)(3) and subdivision (i)(1)(i).

> shall be rendered not later than the third meeting of the committee or board following the plan's receipt of the request for review.

29 C.F.R. § 2560.503-1(i)(1)(ii) (emphasis added).  Defendants maintain subdivision (i)(1)(ii) governs because the CAPF Plan calls for appeals to be heard by a regularly scheduled committee, rather than a plan administrator.

Defendants are correct.  (UF ¶ 20 [CAPF 0107, 0109 establishing and outlining procedures for the Claims Committee and the Executive Board].)  Subdivision (i)(1)(ii) permits plans with a committee to make determinations based on their schedule of quarterly meetings, rather than the redacted 45-day period outlined in subsection (i)(3) and subdivision (i)(1)(i).  Defendants complied with the applicable ERISA requirements here by scheduling plaintiff's Claims Committee hearing on their next scheduled quarterly meeting and rendering their decision in April 2008.

Accordingly, plaintiff's administrative remedies cannot be "deemed exhausted" because CAPF's appeal determination was not untimely.

**III. Futility**

A court "is obliged to exercise its jurisdiction . . . when resort to the administrative route is futile."  <u>Vaught</u>, 456 F.3d at 626-27 (citing <u>Amato</u>, 618 F.2d at 568).  In order for a claim to come under the futility exception, the claimant must prove that "irreparable injury will result unless immediate judicial review is permitted, or where the administrative proceeding would be void."  <u>Southeast Alaska Conservation Council, Inc. v. Watson</u>, 697 F.2d 1305, 1309 (9th Cir. 1983).

1    Here, plaintiff does not argue, let alone proffer evidence,

2  to establish that either of these two conditions are present in

3  this case.  Indeed, the Claims Committee accepted plaintiff's

4  claim, albeit subject to certain offsets.  If plaintiff was

5  dissatisfied with the condition of offsets, he had the option of

6  appealing for reconsideration to the Executive Board.  Moreover,

7  the Plan *required* a 30-day good faith negotiation period, which

8  further ensured that plaintiff would not be irreparably injured

9  from a lack of immediate judicial review.  Plaintiff did not take

10 advantage of these procedures--procedures that fully complied

11 with the ERISA regulations.  Accordingly, the Plan's compliance

12 with the relevant ERISA requirements, and plaintiff's lack of

13 evidence establishing a valid basis for failing to comply with

14 those procedures, precludes deeming the administrative

15 proceedings void.  Under these facts, the court cannot find that

16 plaintiff was excused from exhausting the administrative remedies

17 due to futility.

18                              **CONCLUSION**

19    For the foregoing reasons, defendants' motion for summary

20 judgment is GRANTED.  This action is dismissed without prejudice

21 for plaintiff's failure to exhaust administrative remedies.

22 Accordingly, plaintiff's cross-motion for entry of judgment in

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

                                    15

1  his favor is DENIED.   The Clerk of the Court is directed to close

2  this file.

3          IT IS SO ORDERED.

4  DATED: June 23, 2009

5                                          _____

6                                          FRANK C. DAMRELL, JR.
                                           UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    16