UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BARBOZA, | No. 2:08-cv-0519-KJM-EFB |
| Plaintiff, | |
| v. | ORDER |
| CALIFORNIA ASSOCIATION OF PROFESSIONAL FIREFIGHTERS, et al., | |
| Defendants. | |

Plaintiff David Barboza seeks unpaid long-term disability benefits under the federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* He and the defendants, the California Association of Professional Firefighters (CAPF), the California Association of Professional Firefighters Long Term Disability Plan (the Plan), and California Administration Insurance Services, Inc. (CAIS), have filed cross motions for summary judgment. The court held a hearing on July 24, 2015. Geoffrey White and Michelle Roberts appeared for Barboza, and Brendan Begley appeared for the defendants. For the reasons described below, Barboza's motion is granted.

/////

/////

/////

1

I.     BACKGROUND

    A.     Factual Background

Unless otherwise noted, the court concludes the following facts are not genuinely disputed. CAPF offers a long-term disability plan to California Firefighters, and CAIS is the Plan's administrator. Pl.'s Resp. Defs.' Stmt. Undisputed Material Facts (UMF1) no. 1, ECF No. 163-1. David Barboza was a firefighter for the City of Tracy, California. *Id.* no. 2. Barboza injured his back in the early 1990s, and despite a promotion to a position that involved mostly desk work, his condition worsened in 2003 and 2004. *Id.* nos. 2, 4, 5. The pain spread down his back, and he developed peripheral neuropathy in his legs, which caused pain, numbness, and tingling. *Id.* no. 5.

In late 2005, the City of Tracy eliminated Barboza's position, and in a letter dated March 2, 2006, the City informed Barboza he would be laid off. *Id.* no. 2. The letter gave Barboza four choices: retire on the basis of his age and years of service, accept a layoff, resign from the fire department, or, if the personnel manager determined he was qualified, accept a demotion to Fire Captain. *Id.* If he chose a demotion, it would become effective on March 21, 2006. *Id.* no. 7.

Barboza was too young to retire and did not want to resign or accept a layoff. *Id.* no. 3. That left the fourth option, a demotion, if he was qualified. At some time in mid-March, the Fire Chief asked Barboza whether he could safely perform the duties of a Fire Captain. *Id.* no. 6. Barboza replied that he was unsure, so the City's Human Relations (HR) department sent him to be examined by a doctor. *Id.* On March 27, 2006, a doctor found that his back injury and peripheral neuropathy meant he was physically unqualified to perform the duties of a Fire Captain. *Id.* no. 8. The next day, March 28, 2006, Barboza entered a written agreement with the City, a "Layoff Agreement." *Id.* no. 10; Defs.' Resp. Statement Undisputed Material Facts (UMF2), no. 3, ECF No. 166; Suppl. White Decl. Ex. 1, ECF No. 163-2. The parties agreed Barboza would be demoted to Fire Captain, he would provide the City with a medical certification supporting his "request for an industrial disability retirement," and the City would "expedite the process to determine if Barboza is qualified for industrial disability retirement

benefits." Suppl. White Decl. Ex. 1, at 0372–73, ECF No. 163-2. The City agreed to retire Barboza if he was disabled. *Id.* Barboza also agreed to release the City from any liability for any claims "relating to or underlying . . . [his] employment with the City of Tracy" *Id.* at 0373.

On March 29, 2006, the day after Barboza and the City entered the Layoff Agreement, the City placed Barboza on paid administrative leave. UMF1 no. 9; UMF2 no. 4. His administrative leave continued until mid-May of the same year, when the City moved forward with an "employer-originated application for retirement" and placed Barboza on disability retirement. UMF1 no. 9; UMF2 no. 4.

Barboza filed a claim for disability benefits under the CAPF Plan at the end of May 2006. UMF1 no. 17. After receiving Barboza's claim, CAIS requested information about the status of Barboza's claim for workers' compensation and told him to consult with his attorney about receiving benefits under California Labor Code section 4850, *see* UMF1 no. 18, which provides as follows:

> Whenever any person listed in subdivision (b), who is employed on a regular, full-time basis, and is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his or her duties, he or she shall become entitled, regardless of his or her period of service with the city, county, or district, to a leave of absence while so disabled without loss of salary in lieu of temporary disability payments or maintenance allowance payments, if any, that would be payable under this chapter, for the period of the disability, but not exceeding one year, or until that earlier date as he or she is retired on permanent disability pension, and is actually receiving disability pension payments, or advanced disability pension payments pursuant to Section 4850.3. . . . The persons eligible under subdivision (a) include all of the following: . . . (2) City, county, or district firefighters.

Cal. Lab. Code § 4850(a), (b)(2). CAIS did not pay any benefits, and about a year later, on May 2, 2007, CAPF received a letter from Barboza asking why not. UMF1 no. 20. On May 18, 2007, CAIS denied Barboza's claim for disability benefits. UMF1 No. 22.

Barboza filed an administrative appeal, and CAPF reversed CAIS's denial of benefits; however, it interpreted the Plan instrument to require Barboza's benefits be reduced by an amount equal to one year of his pay. UMF2 no. 8. In particular, the CAPF cited Plan provisions that imposed "offsets" if a claimant waived or forfeited pay he or she was entitled to

3

receive under Labor Code section 4850. *See* White Decl. Ex. 1, at CAPF 0345–48, ECF No. 159. Specifically, CAPF cited the following sections of the Plan in the letter it sent to Barboza to explain its decision:

> 11.5  <u>Benefit Reduction and Offset for Offsetting Benefit/Income Amounts</u>.[1]
>
> Subject to the Minimum Benefit exception pursuant to Section 11.7, during or after the period when a Plan Member is Totally Disabled, if the Plan Member or the Plan Member's Eligible Dependent Survivor receives or is immediately entitled to receive Offsetting Benefit/Income Amounts, as defined below, and these Offsetting Benefit/Income Amounts have not already been applied to reduce the Plan Member's Benefits, then the amount of Benefits that the Plan Member or Eligible Dependent Survivor is entitled to receive hereunder for such Total Disability shall be reduced by the Offsetting Benefit/Income Amounts. The Plan Member must repay to the Plan recovered excess amounts as specified in Section 12. Offsetting Benefit/Income Amounts comprise:
>
> . . .
>
> (c)  <u>Compulsory Benefits and Negotiated Benefits</u>.
>
> Any amount the Plan Member receives or is eligible to receive as a result of the Plan Member's disability (i) under any compulsory benefit act or law including without limitation, any state unemployment compensation disability benefit law or state disability income benefit law, or (ii) pursuant to Sections 4800 or 4850 of the California Labor Code, IDL or any amendment thereof, or any successor or comparable provision or any negotiated substitute;
>
> (d)  <u>Other Income Sources</u>.
>
> Any amount the Plan Member receives as (i) earnings for work or services (including self-employment) performed by a Plan Member during his or her period of Total Disability hereunder, whether payable by the Plan Member's Employer, any other employer or by self employment (other than fifty percent (50%) of Approved Rehabilitative Employment as provided in Section 11.5.2) or (ii) sick leave, vacation pay, other personal leave balances or catastrophic leave balances (donated time by the Plan Member's Employer or fellow employees), unless such sick leave, vacation pay or other personal balance is paid as a lump sum, post-retirement distribution or the 50/50 integration Benefit applies;

---

[1] In section 3.58, the instrument defines "Unpaid Offsetting Benefit/Income Amounts" as "any unpaid, contingent or disputed amounts which [sic] a Plan Member is or may reasonably be entitled, and which amounts will, if paid, comprise Offsetting Benefit/Income Amounts." White Decl. Ex. 1 at CAPF 0071, ECF No. 159.

. . .

    (h)    <u>Benefits For Which the Plan Member Fails to Apply</u>.

Any of the Offsetting Benefit/Income Amounts described in subsections (a) through (g) of this Section 11.5 to which a Plan Member would be entitled following application or submission of appropriate forms, demands or statements or initiated other appropriate action; and

    (i)    <u>Benefits Waived by the Plan Member</u>.

Any of the Offsetting Benefit/Income Amounts described in subsections (a) through (h) of this Section 11.5 that the Plan Member waived or forfeited through benefit election, stipulation, compromise, release, neglect, agreement or other waiver, or through the Plan Member's action or inaction.

White Decl. Ex. 1, at CAPF 0085–87; UMF2 no. 10.

    B.    <u>Procedural Background</u>

Barboza challenged CAPF's decision in his complaint before this court. Compl., ECF No. 1. In June 2009, the court granted the defendants' motion for summary judgment, finding Barboza had not exhausted his administrative remedies, stopping short reaching of the case's substantive merits. Mem. & Order June 23, 2009, ECF No. 31. On appeal, the Ninth Circuit concluded to the contrary: Barboza's claims must be deemed exhausted. *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073 (9th Cir. 2011).

On remand, the parties filed cross motions for summary judgment, which the court granted in part and denied in part. Order Sept. 30, 2012, ECF No. 103. Among other things, the court found the CAPF had not abused its discretion by applying the one-year reduction. The court did not reach plaintiff's request for prejudgment interest. The parties filed cross appeals, and the Ninth Circuit affirmed in part, reversed in part, and remanded in part. *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 594 F. App'x 903 (9th Cir. 2014). On remand this second time, two questions remain unanswered and form the basis of the parties' pending motions.

First, the Ninth Circuit held as follows:

> The district court erred in holding that the Plan was entitled to set off a full year of section 4850 benefits against Barboza's benefit award. Under the terms of the Plan instrument, the Plan was entitled to offset the first two months of administrative leave pay, which Barboza conceded was a "negotiated substitute" for section

> 4850 pay. But there remains a genuine issue of material fact as to whether the Plan required Barboza to retire in a manner that would entitle him to a full year of section 4850 benefits.

594 F. App'x at 906. The court remanded "for further proceedings" on this question and reached no other issue. *Id.* Second, the Ninth Circuit remanded for this court to consider Barboza's request for prejudgment interest. *Id.*

II.     DISCUSSION

    A.     Offset for Benefits under Section 4850

As noted above, the Ninth Circuit held "there remains a genuine issue of material fact as to whether the Plan required Barboza to retire in a manner that would entitle him to a full year of section 4850 benefits." 594 F. App'x at 906. At hearing, the parties agreed the Ninth Circuit intended "Plan" to mean the written Plan instrument. The parties also agree "[t]he CAPF Plan does not expressly dictate the manner in which a participant must retire from fire service in order to be eligible for [long-term disability] benefits." UMF1 no. 16. "Likewise," the parties agree, "the CAPF Plan does not explicitly require a participant to retire in a manner that would entitle him to a full year of 4850 pay in order to be eligible for [long-term disability] benefits." UMF1 no. 16. Neither Barboza nor the defendants have identified portions of the record to show the Plan instrument impliedly or indirectly requires Barboza's retirement in a manner that would entitle him to a year of section 4850 pay, and the court is aware of none.

First, the defendants may not succeed now by arguing Barboza was eligible for section 4850 pay and waived or forfeited that pay. This court previously agreed and granted summary judgment in the defendants' favor. *See* Order Sept. 30, 2012, at 13–15, ECF No. 103. The Ninth Circuit's reversal and remand for resolution of another issue precludes reconsideration of Barboza's eligibility and waiver. *See, e.g.*, *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172−73 (9th Cir. 2006) (collecting cases to show a district court is limited to the issue remanded). Neither may the defendants succeed by arguing the Ninth Circuit's order "left undisturbed" this court's previous conclusion that Barboza was eligible for and waived 4850 pay. Mem. P. & A. 11, ECF No. 162-1. If this were true, whether the Plan required Barboza to retire in a certain manner would be immaterial, and the circuit court would have affirmed.

6

Second, sections 11.11, 11.11.2, and 12 of the Plan do not require resolution in the defendant's favor. Those sections provide as follows:

> 11.11. <u>Plan Member Cooperation Requirements; Contingent Payments</u>.
>
> Each Plan member must cooperate in good faith with the Administrator and Plan in the institution and completion in a timely manner of any and all proceedings and submitting applications, in a timely manner, that are, in the Administrator's sole discretion, necessary or useful to recover any and all Offsetting Benefit/Income Amounts to which the Plan Member is reasonably entitled. . . . Plan Member must take all action and complete all filings, forms and documents requested by the Administrator for the purpose of establishing, perfecting, or evidencing the rights of the Plan or Plan Member to recover Offsetting Benefit/Income Amounts and the obligation of the Plan Member to repay to the Plan such Offsetting Benefit/Income Amounts, including without limitation as provided in Section 11.11.1. . . .
>
> . . .
>
> 11.11.2 <u>Failure to Cooperate</u>.
>
> If a Plan Member fails to comply with any of the cooperation requirements set forth in this Section 11.11 (without regard to the materiality thereof), the Plan Member shall immediately forfeit any rights to continuing Benefits and must immediately and without required notice or demand repay the Plan for all Offsetting Benefit/Income Amounts previously advanced by the Plan, together with all attorneys' fees the Plan incurs in the collection of these amounts.
>
> . . .
>
> 12      <u>Offset and Recovery of Offsetting Benefit/Income Amounts</u>.
>
> . . . The Plan may recover from or offset future Benefits against any and all Offsetting Benefits/Income Amounts, regardless of their characterization and including, without limitation, future medical claims. The Plan has the first right against any and all offsetting Benefit/Income Amounts. The Plan Member holds in trust for the Plan any such recovered amounts until the claims of the Plan are satisfied in full. The Plan Member and Eligible Dependent Survivor must execute and deliver to the Administrator all requested agreements, instruments and papers and do whatever else is necessary, reasonable or appropriate to secure the rights of the Plan under this Section, including without limitation the execution of a reimbursement agreement and form of acknowledgement of the Plan Member's obligations to reimburse the Plan under this Section, including without limitation the execution of a reimbursement agreement and a form of acknowledgement of the Plan Member's obligations to reimburse the Plan for recovered

>Offsetting Benefit/Income Amounts in substantially the form adopted by the Board of Directors from time to time. . . .

White Decl. Ex. 1, at CAPF 0097–100.

Neither CAIS nor CAPF relied on these sections to reach their decisions. When CAPF explained its decision to Barboza, its letter cited several other Plan subsections—11.5, 11.5(c), (d), (h), and (i)—the same subsections the defendants cited in their briefing before this court in 2009 and 2012. *See* Mem. P. & A. Summ. J. 9–10, ECF No. 20; Mem. P. & A. Summ. J. 9–10, ECF No. 75-1. CAPF cited no failure to cooperate and described no bad faith, lack of cooperation, or failure to comply. *See* White Decl. Ex. 1, at CAPF 345–48. Rather, CAPF's decision, as explained in the letter, was motivated by the fact that "[t]here has never been a suggestion that you [Barboza] would not have been entitled to § 4850 pay had you applied for that benefit," and "the current state of case law in California holds that you cannot be forced to accept a disability retirement prior to the exhaustion of these statutory benefits." *Id.* at 0345. The defendants cannot rely on new justifications here: "a court will not allow an ERISA plan administrator to assert a reason for denial of benefits that it had not given during the administrative process." *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719 (9th Cir. 2012).

Even if the court were to reach the application of sections 11.11, 11.11.2, and 12, it could not find the defendants acted within their discretion by interpreting those sections to mandate a retirement consistent with a full year of section 4850 benefits in this case. *See Barboza*, 594 F. App'x at 905–06 (affirming that this court reviews CAPF's decision for an abuse of discretion). Section 11.11 speaks of compliance with the administrator's requests, generalized good-faith cooperation, and timely actions "necessary or useful to recover any and all Offsetting Benefit/Income Amounts to which the Plan Member is reasonably entitled." White Decl. Ex. 1, at CAPF 0097. An interpretation along the lines the defendants advocate therefore assumes Barboza was reasonably entitled to section 4850 pay, that is, that he was eligible for that pay and waived it. But for the reasons discussed above, the Ninth Circuit's order forecloses that result in this case.

8

Lastly, sections 11.11.2 and 12 are not susceptible to the interpretation the defendants advance. Section 11.11.2 recalls "the cooperation requirements set forth in this Section 11.11" and therefore does not alone require any particular retirement. While it could by reference to another provision, the defendants have not cited another section, and the court has likewise not found one. And similarly, section 12 provides a mechanism for the "recovery from or offset future Benefits against any and all Offsetting Benefits/Income Amounts," but it does not alone require any particular retirement.

As to the first issue on remand, Barboza's motion is granted, and the defendants' motion is denied.

B.  Prejudgment interest

As a preliminary note, although a motion for summary judgment is not the typical vehicle for reaching a request for prejudgment interest, the court is aware of no authority prohibiting consideration of this question on summary judgment. In any event, denial on this ground alone would simply require Barboza to submit an identical request later, hardly the efficient result.

"A district court may award prejudgment interest on an award of ERISA benefits at its discretion." *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 627 (9th Cir. 2007). "Prejudgment interest is an element of compensation, not a penalty." *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001). "[T]he interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest 'unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate.'" *Nelson v. EG & G Energy Measurements Grp., Inc.*, 37 F.3d 1384, 1392 (9th Cir. 1994) (quoting *Western Pacific Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984)).

Here, the rate prescribed in 28 U.S.C § 1961(a) is about 0.50 percent.[2] The defendants do not oppose an award at that rate. Barboza has provided evidence to show he paid

---

[2] "[Prejudgment] interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the

interest rates of 4.92 percent to 9.10 percent on a home equity line of credit to cover his expenses while awaiting benefits payments. White Decl. Ex. 5, ECF No. 159. Accordingly, he requests prejudgment interest equal to 5 percent per annum. Mot. Summ. J. 11, ECF No. 158. An award of prejudgment interest equal to the actual rates paid may be appropriate if the Treasury rate is substantially lower. *See Harlick v. Blue Shield of Cal.*, No. 08-3651, 2013 WL 2422900, at *2 (N.D. Cal. June 3, 2013).

In light of the circumstances of this case and in light of the actual interest rates Barboza paid, the court awards prejudgment interest at his requested rate of 5 percent per annum. The defendants rightly note the court granted their previous motion for an equitable lien of $18,000, and the Ninth Circuit affirmed this aspect of the court's order. 594 F. App'x at 906. A counterclaimant may be entitled to prejudgment interest on an equitable lien. *See Moore v. CapitalCare, Inc.*, 461 F.3d 1, 13 (D.C. Cir. 2006). But the value of Barboza's award will reflect a reduction of $18,000, so any further reduction in the interest rate paid will penalize Barboza without justification.

Barboza's motion is also granted as to prejudgment interest.

III.  CONCLUSION

The defendants' motion, ECF No. 162, is DENIED. The plaintiffs' motion, ECF No. 158, is GRANTED. Barboza is entitled to prejudgment interest at a rate of 5 percent per annum.

This order resolves ECF Nos. 158 and 162.

IT IS SO ORDERED.

DATED: November 16, 2015.

UNITED STATES DISTRICT JUDGE

---

Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).

10