1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAVID BARBOZA,                              No.  2:08-cv-0519-KJM-EFB

12                Plaintiff,

13        v.                                     ORDER

14   CALIFORNIA ASSOCIATION OF
     PROFESSIONAL FIREFIGHTERS, et al.,
15
                  Defendants.
16

17

18              David Barboza brought this action under the Employees Retirement Income

19   Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*  Judgment was recently entered

20   following a third round of dispositive cross-motions.  Barboza now seeks attorneys' fees.  As

21   explained below, the motion is GRANTED IN PART.

22   I.      BACKGROUND

23              The parties do not dispute the basic factual and procedural underpinnings of this

24   case.  *See* Mot. Fees 2–6, ECF No. 177; Opp'n 1 & n.1, ECF No. 180. The following summary is

25   drawn from the court's previous orders.  ECF Nos. 103,[1] 172.[2]

26   _____

27        [1] This order is reported at *Barboza v. California Association of Professional Firefighters*,
     No. 08-0519, 2012 WL 4490981 (E.D. Cal. Sept. 30, 2012), *aff'd in part, vacated in part, rev'd*
28   *in part*, 594 F. App'x 903 (9th Cir. 2014).

                                                  1

1    David Barboza was a firefighter for the City of Tracy, California.  In 2006, the

2    City placed him on disability retirement as a result of a back injury and peripheral neuropathy in

3    his legs.  A few months later, he filed a claim for disability benefits under the California

4    Association of Professional Firefighters (CAPF) Long Term Disability Plan (the Plan), which

5    claim was eventually denied in 2007 because the Plan had no documentation of his disability.

6    Barboza filed an administrative appeal, and the Plan's administrative body held a hearing.  Two

7    weeks after the hearing, before the appeal was decided, Barboza filed his complaint in this case.

8    About six weeks after Barboza's complaint was filed, his administrative appeal

9    was decided.  CAPF reversed the previous denial of benefits but reduced Barboza's award by an

10   amount equal to one year of his pay.  In reaching this decision, it cited Plan provisions that

11   impose "offsets" or deductions on benefits when the participant waives or forfeits pay that he or

12   she would otherwise have been eligible to receive from a third-party source.  In Barboza's case,

13   CAPF found Barboza had waived or forfeited pay he was entitled to receive under section 4850

14   of the California Labor Code.[3]

15   After the Plan issued its decision on appeal, Barboza settled a workers'

16   compensation claim with the City of Tracy and received $18,000.  He did not notify the

17   defendants of this settlement.  Neither did he notify the defendants he owned an alpaca ranch,

18   worked intermittently for a digital media company and a railroad, and had other self-employment

19   income.

20

21   [2] This order is reported at *Barboza v. California Association of Professional Firefighters*, ___ F. Supp. 3d ___, 2015 WL 7273215 (E.D. Cal. Nov. 17, 2015), *appeal filed*, No. 15-17300 (9th Cir. Nov. 23, 2015).

22   [3] That section provides in relevant part as follows: "Whenever any person listed in

23   subdivision (b), who is employed on a regular, full-time basis, and is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his or her

24   duties, he or she shall become entitled, regardless of his or her period of service with the city, county, or district, to a leave of absence while so disabled without loss of salary in lieu of

25   temporary disability payments or maintenance allowance payments, if any, that would be payable under this chapter, for the period of the disability, but not exceeding one year, or until that earlier

26   date as he or she is retired on permanent disability pension, and is actually receiving disability pension payments, or advanced disability pension payments pursuant to Section 4850.3. . . . The

27   persons eligible under subdivision (a) include all of the following: . . . (2) City, county, or district

28   firefighters."  Cal. Lab. Code § 4850(a), (b)(2).

2

1        The defendants answered Barboza's federal complaint, and the parties filed cross

2    motions for judgment on the administrative record.  The defendants advanced four principal

3    arguments.  First, they argued Barboza had not exhausted his administrative remedies.  Second,

4    they argued that should the case nonetheless go forward, the correct standard of review was for

5    abuse of discretion.  Third, the defendants argued they had discretion to reduce or offset

6    Barboza's benefits by the amounts he would have received under section 4850.  And fourth, the

7    defendants argued they were entitled to reduce Barboza's award by the $18,000 he received in the

8    settlement of his workers' compensation claim.

9        In mid-2009, the court granted the defendants' motion and denied Barboza's

10   motion.  The court found Barboza had not exhausted his administrative remedies and therefore

11   did not reach the merits of his case.  Barboza appealed the order to the Ninth Circuit, and in mid-

12   2011, the circuit court reversed in a published opinion, concluding Barboza's administrative

13   remedies were deemed exhausted.  *See generally Barboza v. Cal. Ass'n Prof'l, Firefighters*,

14   651 F.3d 1073 (9th Cir. 2011).  The case was remanded for litigation on the merits.

15       The parties undertook discovery, and in January 2012, the defendants requested

16   leave to file an amended counterclaim.  They had learned about Barboza's alpaca ranch, self-

17   employment income, and income from the media company and railroad during discovery, and

18   sought leave to assert claims for equitable relief.  *See* 29 U.S.C. § 1132(a)(3)(B).  The court

19   granted the motion.  The counterclaim asserted the defendants' right to an equitable lien on

20   Barboza's self-employment and other undisclosed earnings.

21       Following discovery, in April 2012, the parties filed cross-motions for summary

22   judgment.  With the exception of the defendants' counterclaim, these motions addressed

23   substantially the same points and arguments as in the parties' pre-appeal motions.  After a

24   hearing, in September 2012, the court granted and denied the motions in part.  First, the court held

25   that the correct standard of review was abuse of discretion.  Second, the court held that CAPF had

26   not abused its discretion by reducing Barboza's benefits by the amount of pay he could have

27   received under section 4850, had he applied for it.  The court also reduced Barboza's award by

28   the $18,000 he had received in the settlement of his workers' compensation claim.  Third, the

1   court rejected the defendants' argument that they were entitled to an equitable lien on the entirety

2   of Barboza's gross self-employment income, but granted an equitable lien on the approximately

3   $1,200 he had earned during his employment with the media company and railroad.  Fourth, the

4   court denied Barboza's motion for statutory penalties under ERISA.  Fifth, the court granted

5   Barboza's motion for injunctive relief and ordered Barboza to comply with the Ninth Circuit's

6   2011 opinion.  The parties filed cross-appeals.

7          The parties also both requested attorneys' fees.  The court denied the motions,

8   finding that although the parties had each achieved some degree of success on the merits of their

9   claims, neither had acted in bad faith, neither had enjoyed significantly greater success than the

10  other, and an award of fees would not properly deter any future wrong.  Later, in addition to

11  requesting fees, defendants asked the court to reconsider its decision to grant Barboza injunctive

12  relief and requested the judgment be amended accordingly.  They argued injunctive relief was

13  unnecessary because the Plan had brought its practices within the bounds of the Ninth Circuit's

14  2011 opinion. The court denied the motion on the absence of admissible evidence showing

15  injunctive relief was unnecessary.  Both parties appealed the court's decision on fees, and the

16  defendants appealed the decision on injunctive relief.

17         The Ninth Circuit issued a memorandum disposition in late 2014.  *See Barboza v.*

18  *California Ass'n of Prof'l Firefighters*, 594 F. App'x 903 (9th Cir. 2014).  First, the circuit court

19  found this court had not erred by reviewing the administrative decision for an abuse of discretion.

20  Second, it held this court had "erred in holding that the Plan was entitled to set off a full year of

21  section 4850 benefits against Barboza's benefit award."  *Id.* at 906.  It identified an unresolved

22  question of fact "as to whether the Plan required Barboza to retire in a manner that would entitle

23  him to a full year of section 4850 benefits," *id.*; however, the circuit court affirmed this court's

24  finding that the defendants had not abused their discretion by offsetting Barboza's benefits by the

25  amount of his workers' compensation settlement.  Third, the circuit found this court had not erred

26  by holding Barboza's other income could offset his benefits only in the amount of his net

27  earnings, not his gross earnings.  Fourth, the circuit affirmed this court's decision not to award

28  statutory penalties under ERISA.  Fifth, the circuit court vacated this court's injunction, finding

4

1   its 2011 decision rendered that relief moot.  And finally, the circuit court found this court had not

2   abused its discretion in denying both parties' motions for attorneys' fees.

3          The case was remanded to this court on two issues: (1) "whether the Plan required

4   Barboza to retire in a manner that would entitle him to a full year of section 4850 benefits"; and

5   (2) whether Barboza's request for prejudgment interest would be granted and in what amount.

6   The parties filed cross-motions for summary judgment on these issues, and the court issued an

7   order in late 2015.  First, the court found the parties agreed that the Plan instruments neither

8   directly nor impliedly required Barboza to retire in a manner that would entitle him to a full year

9   of pay under section 4850.  The court therefore found that the defendant's decision to offset this

10  pay was an abuse of discretion and granted Barboza summary judgment to that extent.  Second,

11  the court awarded Barboza prejudgment interest at a rate of 5 percent, the rate he requested, in

12  light of the fact that the interest rates he actually paid on a home equity line of credit to cover his

13  expenses were significantly higher than the rate prescribed by 28 U.S.C. § 1961.  The defendants

14  appealed this decision, and the appeal remains pending.

15         Barboza filed this motion for attorneys' fees on December 15, 2015.  Mot. Fees,

16  ECF No. 177.  The defendants opposed the motion, ECF No. 180, and Barboza replied, ECF

17  No. 184.  The matter was submitted for decision without a hearing.  After Barboza's reply brief

18  was filed, the defendants filed evidentiary objections and moved to strike portions of the

19  declarations attached to the plaintiffs' reply brief.  Mot. Strike, ECF No. 185.  Barboza

20  responded.  Opp'n Strike, ECF No. 186.  Neither party suggests the court should delay its order

21  on this motion until the appeal of its November 2015 order is resolved.

22  II.     SUCCESS ON THE MERITS

23         In most ERISA cases, the court may award a reasonable attorney's fee and costs to

24  either party.  29 U.S.C. § 1132(g)(1); *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 244

25  (2010).  One who claims a fee under § 1132(g)(1) need not be the prevailing party; rather, "some

26  degree of success on the merits" will do.  *Hardt*, 560 U.S. at 255.  A litigant achieves this goal "if

27  the court can fairly call the outcome of the litigation some success on the merits without

28  conducting a 'lengthy inquir[y] into the question whether a particular party's success was

5

1    substantial or occurred on a central issue.'" *Id.* (quoting *Ruckelshaus v. Sierra Club*, 463 U.S.

2    680, 688 (1983)) (alterations in *Hardt*).  "Trivial" successes and "purely procedural" victories fall

3    short of the mark.  *Id.*

4           The defendants read *Hardt* incorrectly to hold that a fee may be awarded only if

5    Barboza's success was undeniably substantial or central.  *See* Opp'n at 2 ("[I]n order for a

6    plaintiff to recover attorney fees in an ERISA action, it must be so obvious that his 'success was

7    substantial or occurred on a central issue' that 'the court can fairly call the outcome of the

8    litigation . . . without conducting a lengthy inquiry' to make such determinations." (quoting

9    560 U.S. at 255)).   Rather, in *Ruckelshaus v. Sierra Club*,[4] the Court explained that by allowing

10   attorneys' fees in an "appropriate" case, "Congress meant merely to avoid the necessity for

11   lengthy inquiries into the question whether a particular party's success was 'substantial' or

12   occurred on a 'central issue.'"  463 U.S. at 688 & n.9.  This language is "meant to expand the

13   class of parties eligible for fee awards from prevailing parties to *partially prevailing* parties—

14   parties achieving *some success*, even if not major success."  *Id.* at 688 (emphasis in original).

15          Here, Barboza identifies four successes as the basis for a fee award.  First, he

16   argues that the very filing of this lawsuit pressured the defendants into recognizing his disability

17   and eligibility for benefits.  Mot. Fees at 7.  The connection between the defendants' decision to

18   issue a decision in the administrative process and Barboza's lawsuit is a weak one at best.  It is

19   undisputed the defendants alerted Barboza that they intended to address section 4850 in early

20   2008, before he filed his federal complaint.  If Barboza were correct that the defendants reversed

21   course on his disability and eligibility only after this lawsuit was filed, they would have had no

22   reason to address section 4850 at the administrative hearing.  The resolution of his administrative

23   appeal and his early-case practice therefore does not support this motion.

24          Second, Barboza argues he achieved success when the Ninth Circuit held his

25   administrative remedies should be deemed exhausted in its 2011 opinion.  Mot. Fees at 7.  In

26

27          [4] The *Hardt* Court expressly adopted the rule of *Ruckelshaus* for claims under
     § 1132(g)(1).  *See* 560 U.S. at 255 ("*Ruckelshaus* lays down the proper markers to guide a court
28   in exercising the discretion that § 1132(g)(1) grants.").

1   response, the defendants point out that the parties already negotiated a fee award for time spent

2   litigating that issue, and Barboza received compensation in line with those negotiations. *See*

3   Begley Decl. ¶ 4, ECF No. 83-2.  In reply, Barboza does not dispute this characterization.  The

4   court therefore finds this success cannot serve as a basis for an award now.

5          Third, Barboza argues he successfully persuaded both this court and the Ninth

6   Circuit that only his net earnings, rather than his gross earnings, may be offset against his

7   disability benefits. Mot. Fees at 7–8.  This success cannot support his motion here.  He raised the

8   same argument in his previous motion for attorneys' fees, *see* Prev. Mot. Fees 6, ECF No. 114,

9   this court declined to award any fees on this basis, Order Aug. 6, 2013, at 6, ECF No. 132, and

10  the Ninth Circuit affirmed that decision, 594 F. App'x at 906–07.  The relevant law and evidence

11  have not changed since then.  The court declines to reconsider its decision on that award now,

12  which remains undisturbed in this respect.  By the same reasoning, the court declines to grant any

13  award on the basis of Barboza's success in obtaining injunctive relief.

14         Lastly, Barboza argues he successfully appealed this court's decision denying his

15  motion for summary judgment on the question of pay under section 4850.  Similarly, he argues

16  that he succeeded on the merits of his post-remand motion for summary judgment late last year,

17  when this court found that no Plan provisions expressly or impliedly required him to retire in a

18  particular manner.  He also argues he succeeded in securing five percent prejudgment interest, the

19  full amount he requested.  The defendants do not seriously dispute that these dispositions

20  represent "some degree of success on the merits."  The court agrees the Ninth Circuit's reversal

21  and this court's order granting summary judgment and prejudgment interest are sufficient

22  successes on the merits to support a request for attorneys' fees under 29 U.S.C. § 1132(g)(1).

23  III.    *HUMMELL* FACTORS

24         After an ERISA litigant shows it has achieved some degree of success on the

25  merits, the court's discretion to award a fee is guided by five considerations commonly referred to

26  as the *Hummell* factors, after the Ninth Circuit's decision in *Hummell v. S.E. Rykoff & Co.*:

27                 (1) the degree of the opposing parties' culpability or bad faith;
                   (2) the ability of the opposing parties to satisfy an award of fees;
28                 (3) whether an award of fees against the opposing parties would

deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121 (9th Cir. 2010) (quoting *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980)).  No single factor of the five is decisive, and some may even be irrelevant, depending on the case.  *Id.* at 1122.  Moreover, when a plaintiffs' success is evident on the face of the previous order, "it is unnecessary for the court to engage in a discussion of the factors enumerated in *Hummell*."  *Nelson v. EG & G Energy Measurements Grp., Inc.*, 37 F.3d 1384, 1392 (9th Cir. 1994).  This is true, for example, should the plaintiff prevail on summary judgment.  *United Steelworkers of Am. v. Ret. Income Plan For Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008).  The court nevertheless addresses these factors in the interest of clarity and completeness.

A.      Application of *Hummell* Factors Generally; "Special Circumstances" Test

When applying the *Hummell* factors, the court must bear in mind the underlying purpose of ERISA: "to protect the interests of participants in employee benefit plans."  *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984).  The Ninth Circuit has regularly confirmed this rule.  *See, e.g.*, *LeGras v. AETNA Life Ins. Co.*, 786 F.3d 1233, 1236 (9th Cir. 2015); *Resilient Floor Covering Pension Fund v. M&M Installation, Inc.*, 630 F.3d 848, 854 (9th Cir. 2010).  And in several decisions, the Ninth Circuit has held that ERISA plan beneficiaries should recover their attorneys' fees unless "special circumstances" would render such an award unjust.  *See, e.g.*, *Lasheen v. Embassy of The Arab Republic of Egypt*, 625 F. App'x 338, 341, (9th Cir. 2015); *United Steelworkers,* 512 F.3d at 564; *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999); *Smith*, 746 F.2d at 589.

In light of this authority, the court disagrees with defendants that the "special circumstances" test wrongly appends a "sixth factor" to the *Hummell* list, Opp'n at 4, although the test may at first seem in discord with a second line of ERISA-fee decisions, *see, e.g.*, *Reilly v. Charles M. Brewer Ltd. Money Purchase Pension Plan & Trust*, 349 F. App'x 155, 158 (9th Cir. 2009); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1236 (9th Cir. 2000);

8

1  *Estate of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 408 (9th Cir. 1997).  The Ninth

2  Circuit's decision in *Shockley v. Alyeska Pipeline* is the progenitor of this second line.  *See*

3  130 F.3d at 408.  In that case, the circuit court considered an appeal from the district court's

4  decision to award an ERISA fiduciary ten percent of its fees against the plaintiff-participant.  *Id.*

5  The district court had inferred from previous Ninth Circuit decisions that awards against ERISA

6  plaintiffs are disfavored.  *Id.*; *cf. Corder v. Howard Johnson & Co.*, 53 F.3d 225, 231 (9th Cir.

7  1994) ("We have frequently expressed our disfavor of awards of attorney's fees against individual

8  ERISA plaintiffs who seek pension benefits to which they believe they are entitled.").  The

9  *Shockley* court therefore clarified that a court considering an ERISA fee petition "must focus only

10  on the *Hummell* factors, without favoring one side or the other."  *Id.*  The fee-petition playing

11  field is level.  *Id.*

12         In a 2003 opinion, the Ninth Circuit confirmed the applicability of both the

13  "special circumstances" rule of *Smith* and *Shockley's* level-playing-field maxim.  *See Honolulu*

14  *Joint Apprenticeship & Training Comm. of United Ass'n Local Union No. 675 v. Foster*, 332 F.3d

15  1234, 1240 (9th Cir. 2003).  These rules are "not inconsistent."  *Id.*  Rather, they "reflect a

16  recognition of both the remedial purpose of ERISA on behalf of beneficiaries and participants, as

17  well as the clear statutory language that makes fees available to 'either party.'"  *Id.* (quoting

18  29 U.S.C. § 1132(g)(1)).  That is, an ERISA plaintiff who enjoys a degree of success on the

19  merits of his case should recover his attorneys' fees, absent special circumstances and injustice,

20  but ERISA-plan defendants may also recover their fees, and in this respect the statute favors

21  neither party.

22         B.     Neutral, Irrelevant, or Negative *Hummell* Factors

23         Turning now to the *Hummell* list, in some respects, the factors in the context of

24  this case are neutral, irrelevant, or weigh against an award.  The first, third and fourth factors fall

25  into this zone.

26                1.     Culpability or Bad Faith (First Factor)

27         As described in this court's previous order, this litigation was hard-fought and

28  concerned knotty questions of law and fact.  The defendants litigated aggressively but within the

9

1    bounds of good faith.  The questions resolved in the court's recent order on summary judgment

2    were winnowed after discovery, three series of dispositive motions, and two trips to the appellate

3    court.  A third appeal is now pending.  Contrary to Barboza's suggestion, the defendants'

4    renewed appeal does not exemplify bad-faith litigation tactics, but a good-faith attempt to assert

5    interests on the horns of a dilemma.

6                  Neither does the defendants' culpability support an award here.  The cases

7    Barboza cites in this regard are readily distinguishable.  In *Pomerleau v. Health Net of California,*

8    *Inc.*, the plaintiff established the defendant had reversed course after the plaintiff's attorney

9    generated adverse publicity and filed a federal complaint, despite the fact that nothing about her

10   claim had changed.  No. 11-1654, 2012 WL 5829850, *3 (C.D. Cal. Nov. 15, 2012).  In *Werb v.*

11   *ReliaStar Life Insurance Co,* the plaintiff demonstrated the defendant had repeatedly denied

12   benefits only to reverse its decision later on.  *See* 847 F. Supp. 2d 1140, 1155 (D. Minn. 2012).

13   And in *Caplan v. CAN Financial Corp.*, the plaintiff showed the defendant had exhibited "total

14   disregard" for the conclusions of his treating physicians, had "discounted a wealth of evidence

15   that [he] was not able to perform the duties of his occupation," and had "arbitrarily refuse[d] to

16   credit . . . reliable evidence" he submitted.  *See* 573 F. Supp. 2d 1244, 1248 (N.D. Cal. 2008)

17   (order on fees); 544 F. Supp. 2d 984, 992–93 (N.D. Cal. 2008) (order on judgment).[5]  Here, by

18   contrast, Barboza has presented no evidence showing the defendants reversed course only in the

19   face of negative publicity and a federal lawsuit, no evidence they repeatedly denied him benefits

20   only to inexplicably change their tune, and no evidence they exhibited total and arbitrary

21   disregard for his factual submissions.  Rather, the defendants held consistently to their position

22   that the Plan could deduct pay Barboza was entitled to receive under section 4850 but waived, a

23   position this court originally endorsed.  *See* Order Sept. 30, 2012, at 10–15, ECF No. 103.

24   _____

25        [5] If the *Caplan* court's order on attorneys' fees is read without reference to its prior order
     on judgment, such a reading may suggest the first *Hummell* factor weighs in favor of any ERISA
26   claimant who obtains some success on the merits.  *See* 573 F. Supp. 2d at 1248 ("[F]rom a legal
     perspective, Defendants are 'culpable' in that they were found to owe Plaintiff a legal duty that
27   they were not fulfilling.").  Because *Hummell* refers to the "degree" rather than the mere
     existence of an opposing party's culpability or bad faith, the court concludes this isolated reading
28   was not the *Caplan* court's intent.

1        2.      Deterrence and Broader Benefit (Third and Fourth Factors)

2        The third and fourth *Hummell* factors also are either neutral or weigh slightly

3 against an award here.  Barboza's case and claims were factually unique, as was the defendants'

4 theory of his waiver of benefits under Labor Code section 4850.  *See, e.g.*, Defs.' Mem. P. & A.

5 Summ. J. 4–7, 10–14, ECF No. 162-1; Pl.'s Mot. Summ. J. 5–7, ECF No. 158.  He asserts in

6 general terms that in light of the court's order, the Plan will not be permitted to deny others

7 benefits on the ground that they waived pay under section 4850.  That interpretation misreads the

8 issue on which he succeeded: the defendants found Barboza had waived benefits under section

9 4850 by taking a disability retirement, but no plan provision required him to retire in a particular

10 manner, so the administrative decision was an abuse of discretion.  *See* Order Nov. 17, 2015, at 6.

11 Assuming this court's order on summary judgment is generalizable beyond the facts of this case,

12 it is unclear what its net effect will be, although a former Plan administrator certainly believes

13 that on balance plan participants will be harmed.  *See* Floyd Decl. ¶¶ 4–7, ECF No. 180-2.

14    C.    *Hummell* Factors that Favor an Award

15        In any event, the remaining factors outweigh the first three and favor an award as

16 discussed below.

17        1.      Defendants' Ability to Satisfy Award (Second Factor)

18        Although the parties dispute the factual specifics of the Plan's net assets, the court

19 finds the defendants have greater capacity to absorb the costs of this litigation than does Barboza.

20 This finding squares with the Ninth Circuit's admonition in *Smith* that individual ERISA

21 claimants fight uphill battles, and "[w]ithout counsel fees the grant of federal jurisdiction is but a

22 gesture for few [plaintiffs] could avail themselves of it."  746 F.2d at 590 (quoting *Hall v. Cole*,

23 412 U.S. 1, 13 (1973) (addressing the Labor-Management Reporting and Disclosure Act,

24 29 U.S.C. § 401 *et seq.*)).

25        2.      Relative Merits of Parties' Positions (Fifth Factor)

26        The relative merits of the parties' positions strongly favor an award.  As

27 summarized above, Barboza obtained an order reversing summary judgment in part and

28 remanding the case to this court for further proceedings on two questions: (1) "whether the Plan

1 required Barboza to retire in a manner that would entitle him to a full year of section 4850

2 benefits"; and (2) "whether Barboza's request for prejudgment interest on his benefits award is

3 warranted." 594 F. App'x at 906. After remand, Barboza succeeded handily on both issues. The

4 parties agreed the Plan instrument "does not expressly dictate the manner in which a participant

5 must retire from fire service in order to be eligible for [long-term disability] benefits" and they

6 agreed the Plan "does not explicitly require a participant to retire in a manner that would entitle

7 him to a full year of [section] 4850 pay in order to be eligible for [long-term disability] benefits."

8 Order Nov. 17, 2015, at 6. In addition, neither party "identified portions of the record to show the

9 Plan instrument impliedly or indirectly requires Barboza's retirement in a manner that would

10 entitle him to a year of section 4850 pay, and the court is aware of none." *Id.* Summary

11 judgment was therefore granted in Barboza's favor. Barboza also obtained prejudgment interest

12 at a rate significantly higher than that ordinarily prescribed by statute. *Id.* at 9–10. This success

13 contrasts with the situation before the court on the parties' previous fee applications, where

14 "neither party had significantly greater success on the merits than the other." Order Aug. 6, 2013,

15 at 6, ECF No. 132.

16      3. Special Circumstances Test

17     Finally, the court is aware of no "special circumstances" that suggest an award of

18 attorneys' fees would be unjust.

19    D. Conclusion

20     In summary, Barboza has established his entitlement to an award. In light of the

21 parties' differing capacities to bear the costs of this litigation and Barboza's clear successes in

22 obtaining partial reversal on appeal, followed by summary judgment in his favor and prejudgment

23 interest, an award of reasonable attorneys' fees would advance ERISA's remedial purpose and

24 secure his "ready access to the Federal courts." 29 U.S.C. § 1001(b); *Smith*, 746 F.2d at 590.

25 IV. LODESTAR AND MULTIPLIER

26     When an ERISA litigant is entitled to an award of attorneys' fees, the court begins

27 by multiplying the number of hours reasonably expended in the litigation by a reasonable hourly

28 rate, i.e., by calculating the "lodestar" fee. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983);

1  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007).  The fee applicant bears the

2  burden to document these hours and submit evidence showing the requested hourly rate is

3  reasonable.  *Welch*, 480 F.3d at 945–46.  Second, after determining the lodestar fee, the court

4  must decide whether to adjust that fee upward or downward based on any facts that escaped

5  consideration in the initial lodestar calculation.  *Id.* at 946.  This second-step adjustment is

6  appropriate in only "rare and exceptional cases" when supported by "specific evidence" and

7  "detailed findings."  *Id.*; *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir.

8  2000).

9          A.       Hourly Rate

10              A reasonable hourly rate takes account of an attorney's experience, skill, and

11  reputation.  *Welch*, 480 F.3d at 946.  To determine this rate, the court does not refer simply to the

12  rates the attorney actually charged, but determines what rate is paid to attorneys of comparable

13  ability and reputation for similarly complex work in the relevant community.  *Id.*; *United*

14  *Steelworkers*, 512 F.3d at 564.  A fee applicant may carry his burden to show a particular rate is

15  reasonable by submitting rate determinations in other cases litigated by the same firm or

16  "declarations from comparable ERISA lawyers" attesting that the market would sustain the

17  requested rate.  *Welch*, 480 F.3d at 947.

18              Barboza requests fees for the time of three attorneys: Geoffrey White, Cassie

19  Springer Ayeni, and Michelle Roberts.  Geoffrey White is a 1975 law graduate of Boalt Hall

20  School of Law at the University of California, Berkeley.  White Decl. Ex. 1, ECF No. 177-1.

21  Since the beginning of his practice he has worked predominantly on ERISA, labor and

22  employment, and employment benefits matters.  Prev. White Decl. ¶ 2, ECF No. 114-1.  In 1991

23  he opened his own law office, and has since then litigated dozens of ERISA and similar cases.

24  *Id.* ¶ 3.  Barboza has submitted declarations from ERISA attorneys describing White as "one of

25  the most experienced and respected ERISA litigators in the nation," Cretiz Decl. ¶ 11, ECF

26  No. 177-3, "highly regarded in the ERISA litigation community," Grey Decl. ¶ 11, ECF

27  No. 177-5, and "among the most experienced and talented ERISA attorneys in Northern

28  California," Kantor Decl. ¶ 19, ECF No. 177-6.

1        Cassie Springer Ayeni and Michelle Roberts are the founding partners of Springer

2   & Roberts LLP, a firm formed in 2008 to focus on ERISA matters, including disability, health,

3   and pension benefit matters.  Roberts Decl. ¶¶ 1, 3, ECF No. 177-2.  Springer Ayeni is a 2002 law

4   graduate of the Boalt Hall School of Law at the University of California, Berkeley.  *Id.* Ex. A.

5   Roberts is a 2005 graduate of the same school.  *Id.* Ex. B.  Both have practiced exclusively in the

6   ERISA and employee benefits arenas since graduation.  Other ERISA attorneys who know

7   Springer Ayeni and Roberts attest to their excellent reputations and abilities in ERISA litigation.

8   *See* Creitz Decl. ¶ 11; Grey Decl. ¶ 11; Kantor Decl. ¶ 19; Dean Decl. ¶ 14, ECF No. 177-4.

9        In addition to the three attorneys, Barboza also requests compensation for time

10  spent by Susan Foley, who supported Springer Ayeni and Roberts as a paralegal.  Roberts Decl.

11  ¶ 4.  Foley earned a law degree from Gonzaga University in 1996 and is a member of the

12  California bar.  *Id.*

13       Barboza requests an hourly rate of $650 for White, $625 for Springer Ayeni, $600

14  per hour for Roberts, and $175 per hour for Foley.  In support of these requests, Barboza cites

15  declarations from the three attorneys quoted above, who believe hourly rates in these amounts

16  would fit the prevailing market.  *See* Creitz Decl. ¶¶ 12–14; Dean Decl. ¶ 14; Grey Decl. ¶¶ 11–

17  12; Kantor Decl. ¶ 20.  These attorneys also attest that in the Central and Northern Districts of

18  California, they have recently charged or have been awarded hourly rates between $500 and

19  $750.  *See* Creitz Decl. ¶ 6; Kantor Decl. ¶¶ 6–8; Dean Decl. ¶¶ 5–6; Grey Decl. ¶ 10.  Barboza

20  also cites ERISA decisions from the Central and Northern Districts of California in which similar

21  rates were awarded.  *See* Mot. Fees at 14–15.  Barboza and his attorneys argue these rates reflect

22  those charged in the relevant community, which they believe is California at large, if not the

23  United States as a whole.  *See* Reply at 8–9.  Springer Ayeni and Roberts have also submitted

24  evidence that they were compensated at rates of $450 and $400 per hour, respectively, for their

25  efforts in an ERISA case litigated in 2013 in the Northern District of California.

26       In opposition to these proposed rates, the defendants argue competent ERISA

27  attorneys in Sacramento charge rates much lower than $600 per hour.  *See* Opp'n at 15–18.

28  Defense counsel Brendan Begley lists several Sacramento lawyers he believes are capable and

1    reputable within the sphere of ERISA litigation, including in the representation of ERISA

2    plaintiffs.  *See* Begley Decl. ¶ 13, ECF No. 180-5.  The defendants have also submitted the

3    declarations of other attorneys who believe competent ERISA and employment attorneys in

4    Sacramento charge less than $400 per hour.  *See* Green Decl. ¶¶ 4, 7, ECF No. 180-1; Cooper

5    Decl. ¶ 28, ECF No. 180-4.  Begley himself, a 1998 law graduate of the King Hall School of Law

6    at the University of California, Davis, charged between $300 and $400 per hour in this case.  *See*

7    Begley Decl. ¶¶ 2, 17.  The defendants have also submitted the declaration of Brand Cooper,

8    whom they retained as an expert to survey the availability of employment litigators in Sacramento

9    and the prevailing Sacramento rate.  *See* Cooper Decl. ¶ 1.[6]  Cooper believes White would be

10   reasonably compensated at $425 per hour, Roberts at $275 per hour, and Springer Ayeni at $325

11   per hour.  *Id.* ¶ 36.  The defendants do not challenge the hourly rate requested for Foley's time.

12          After considering the parties' evidence and citations, the court concludes based on

13   the current record that ERISA litigation is often a state-wide practice, although probably not

14   nationwide.  The defendants' evidence itself suggests this is true, *see* Green Decl. ¶ 3, and

15   California district courts in this and the Southern District have reached a similar conclusion, *see,*

16   *e.g.*, *McAfee v. Metro. Life Ins. Co.*, 625 F. Supp. 2d 956, 975 (E.D. Cal. 2008), *aff'd,* 368 F.

17   App'x 771 (9th Cir. 2010); *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1191

18   (S.D. Cal. 2003).  At a minimum it may fairly be said that the geographical boundaries of the

19   "relevant community" here blend into neighboring California districts.  Fee awards in ERISA

20   cases in the Central and Northern Districts of California often exceed $500 per hour for reputable

21   attorneys.  *See, e.g.*, *Harlick v. Blue Shield of Cal.*, No. 08-3651, 2013 WL 2422900, at *5 (N.D.

22   Cal. June 3, 2013); *Dine v. Metro. Life Ins. Co.*, No. 05-3773, 2011 WL 6131312, at *3 (C.D.

23   Cal. Dec. 9, 2011); *Langston v. N. Am. Asset Dev. Corp. Grp. Disability Plan*, No. 08-02560,

24   2010 WL 1460201, at *2 (N.D. Cal. Apr. 12, 2010); *Caplan*, 573 F. Supp. 2d at 1249–50.  Judges

25   _____

26          [6] A substantial portion of Cooper's declaration is not an opinion but legal argument.  *See*
     *id.* ¶¶ 6–27.  Legal arguments should be presented in a party's moving and opposition briefing,
27   not in its supporting declarations.  *See United States v. Sierra Pac. Indus.*, No. 09-2445, 2012 WL
     175071, at *1 (E.D. Cal. Jan. 20, 2012).  The court has accordingly disregarded these sections of
28   Cooper's declaration as well as any responsive argument in Barboza's reply briefing.

1   in this district have approved almost comparable rates in ERISA cases. *See, e.g.*, *McAffee*, 625 F.

2   Supp. 2d at 975 ($400 per hour in 2008 for plaintiff's attorney with thirty years' experience);

3   *Aguilar v. Melkonian Enterprises, Inc.*, No. 05-00032, 2007 WL 201180, at *8 (E.D. Cal. Jan. 24,

4   2007) (awarding $495 per hour in a common-fund ERISA settlement).  Paralegal hours are also

5   regularly compensated at rates approximating the $175 requested for Foley's time. *See, e.g.*,

6   *Aguilar*, 2007 WL 201180, at *8.

7           In consideration of this evidence and the parties' arguments, the court concludes

8   White's time will be reasonably compensated at $550 per hour, Springer Ayeni's time at $525 per

9   hour, Robert's time at $500 per hour, and Foley's time at $175 per hour.

10          B.      Hours Expended

11          The court next determines whether the hours submitted in support of Barboza's fee

12   application are compensable.  Many are not, as explained below.

13                  1.      Time Spent on Matters for which the Motion is Denied

14          The court concluded above that Barboza achieved a degree of success on the

15   merits by securing the partial remand and summary judgment, and that as a matter of discretion,

16   an award of his fees incurred to achieve that success is justified under 29 U.S.C. § 1132(g)(1).  In

17   addition, time spent preparing the pending motion for attorneys' fees may be compensable. *See*

18   *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1387 (9th Cir. 1990), *overruled on*

19   *other grounds*, *City of Burlington v. Dague*, 505 U.S. 557 (1992).  But Barboza has not borne his

20   burden to establish he is entitled to fees incurred in the administrative appeal, in the early stages

21   of this litigation, in his 2011 appeal on administrative exhaustion, in arguing to this court and on

22   appeal that the defendants could offset only his net earnings, or in obtaining injunctive relief from

23   this court in 2012.  Hours expended on these tasks are therefore excluded.

24                  2.      Hours Spent Litigating the Most Recent Appeal

25          The defendants argue Barboza is jurisdictionally barred in this court from

26   obtaining any fee award for time expended in the 2013–2014 appeal, including time related to the

27   offset for pay under section 4850.  Opp'n at 12–13.  Under Ninth Circuit Rule 39-1.8, "[a]ny

28   party who is or may be eligible for attorneys fees on appeal to [the Circuit] Court may, within the

16

1   time permitted in Circuit Rule 39-1.6, file a motion to transfer consideration of attorneys' fees on

2   appeal to the district court or administrative agency from which the appeal was taken." Ninth

3   Circuit Rule 39-1.6 sets a time limit of "14 days after the expiration of the period within which a

4   petition for rehearing may be filed, unless a timely petition for rehearing is filed."

5          If a litigant is eligible for fees incurred in an appeal but requests neither a fee

6   award under Rule 39-1.6 nor a post-appeal transfer under Rule 39-1.8, the district court is not

7   authorized to rule on a post-remand request for attorneys' fees incurred on the appeal. *Cummings*

8   *v. Connell*, 402 F.3d 936, 948 (9th Cir. 2005). The Ninth Circuit reluctantly confirmed last year

9   that this rule is jurisdictional, finding it was "bound" by *Cummings* despite a logically appealing

10  decision to the contrary in the Eighth Circuit. *See Yamada v. Snipes*, 786 F.3d 1182, 1210 n.21

11  (9th Cir.) (citing *Little Rock Sch. Dist. v. State of Ark.*, 127 F.3d 693, 696 (8th Cir. 1997)),[7] *cert.*

12  *denied sub nom. Yamada v. Shoda*, 136 S. Ct. 569 (2015). In light of *Yamada,* the jurisdictional

13  effect of Ninth Circuit Rule 39-1.8 does not remain uncertain. *See* Reply at 6–7 (citing *Twentieth*

14  *Century Fox Film Corp. v. Entmt. Distrib.*, 429 F.3d 869 (9th Cir. 2005), and *Young v. C.I.R.*,

15  92 T.C.M. (CCH) 228 (2006)).

16         Here, the parties do not dispute that Barboza filed no request to transfer under Rule

17  39-1.8 within the time required by Rule 39-1.6 and filed no motion for fees before the circuit

18  court. As explained above, 29 U.S.C. § 1132(g)(1) allows an ERISA claimant to request a fee

19  award upon achieving "some degree of success on the merits." *Hardt*, 560 U.S. at 255. Status as

20  a "prevailing party" is unnecessary. *Id.* Because the Ninth Circuit held that this court "erred in

21  holding that the Plan was entitled to set off a full year of section 4850 benefits against Barboza's

22  benefit award" and remanded for consideration of another issue, the court finds Barboza achieved

23  some degree of success on the merits at the appellate level, regardless of the interlocutory nature

24  of the remanded questions. Barboza argues as much in his opening brief here. *See* Mot. Fees

25  at 2. Any other conclusion would also conflict with this court's recent order on summary

26

27         [7] In *Little Rock School District*, the Eighth Circuit held that despite a rule analogous to
    Ninth Circuit Rule 39-1.6, "district courts retain jurisdiction to decide attorneys' fees issues" the
28  appellate court does not itself undertake to decide. 127 F.3d at 696.

1    /////

2    judgment.  *See* Order Nov. 17, 2015, at 6, 8.  This court therefore lacks authority to consider his

3    request for fees incurred during the most recent appeal.

4                    3.      Excessive, Redundant, or Otherwise Unnecessary Time

5                    "In determining the appropriate lodestar amount, the district court may exclude

6    from the fee request any hours that are 'excessive, redundant, or otherwise unnecessary.'"  *Welch*,

7    480 F.3d at 948 (quoting *Hensley*, 461 U.S. at 433).  As noted above, the fee applicant bears the

8    burden to document the time for which compensation is requested.  *Id.* at 945–46.  A district court

9    may therefore impose reductions if it is unable to attribute hours to one or another task, i.e., for

10   block billing.  *See, e.g.*, *id.* at 948 ("[B]lock billing makes it more difficult to determine how

11   much time was spent on particular activities.").  But "attorneys are 'not required to record in great

12   detail how each minute of [their] time was expended.'"  *United Steelworkers*, 512 F.3d at 565

13   (quoting *Hensley*, 461 U.S. at 437 n.12) (alteration in *United Steelworkers*).  Attorneys "need

14   only 'keep records in sufficient detail that a neutral judge can make a fair evaluation of the time

15   expended, the nature and need for the service, and the reasonable fees to be allowed.'"  *Id.*

16   (quoting *Hensley*, 461 U.S. at 441 (Burger, C.J., concurring)).

17                   Here, the court has reviewed the declarations submitted by Barboza's attorneys,

18   including with regard to Foley, and finds the tasks documented were sufficiently necessary and

19   recorded with appropriate detail, with one exception.  White documented 21.5 hours preparing a

20   declaration in support of Barboza's reply brief.  The court first questions whether it was necessary

21   for White himself to create this declaration rather than a less experienced attorney or paralegal.

22   *See* White Suppl. Decl. ¶¶ 4–5 & Exs. 1–7, ECF No. 184-1 (collecting the results of PACER

23   searches).  Second, a great deal of his declaration is argument that should have been included in

24   the reply brief itself.  *See* White Suppl. Reply ¶¶ 3–8; *see also* note 6 *supra*.  Because White has

25   not clarified how his time was divided in the preparation of his reply declaration, the court applies

26   a general reduction of 15 hours, for a net of 6.5 compensable hours for this task.

27

28

1          C.      Multiplier

2                Barboza requests no multiplier.  The defendants suggest a reduction is warranted

3 because Barboza obtained only "razor-thin success on a solitary claim."  Opp'n at 10.  The court

4 disagrees that Barboza's success here was "razor-thin."  Any further reduction would also

5 duplicate the hourly reductions and exclusions imposed above.  This is simply not the "rare and

6 exceptional" case where a reduction is appropriate.  *Welch*, 480 F.3d at 946.

7          D.      Summary

8                The court awards $80,137.50 in fees as follows:

9 • Geoffrey White – 43.1 hours between December 12, 2014 and September 15, 2015 on the

10 matters remanded to this court by the Ninth Circuit, 15 hours preparing the motion for

11 attorneys' fees, and 6.5 hours preparing a reply declaration, compensated at $550 per

12 hour, in total $35,530.00.

13 • Cassie Springer Ayeni – 1.8 hours between December 8, 2015 and March 25, 2015 on the

14 matters remanded to this court by the Ninth Circuit, compensated at $525 per hour, in total

15 $945.00.

16 • Michelle Roberts – 56.2 hours between December 8, 2014 and July 24, 2015 on the

17 matters remanded to this court by the Ninth Circuit, 15.7 hours preparing the motion for

18 attorneys' fees, and 13.5 hours preparing the reply brief, compensated at $500 per hour, in

19 total $42,700.00.

20 • Susan Foley – 4.7 hours between June 15, 2015 and July 24, 2015 on matters remanded to

21 this court by the Ninth Circuit and 0.8 hours preparing the motion for attorneys' fees,

22 compensated at $175 per hour, in total $962.50.

23 V.    COSTS

24                Barboza also requests compensation for his costs.  Section 1132(g)(1) allows the

25 court to award an ERISA litigant any "costs of action" of the type permitted under 28 U.S.C.

26 § 1920.[8]  *Agredano v. Mut. of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996).  However,

27 _____

28          [8] That section provides as follows: "A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically

1    interpreting an analogous clause in § 1132(g)(2), the Ninth Circuit has held that the court may

2    also award an ERISA litigant its non-taxable costs as attorneys' fees, provided those costs are

3    ordinarily billed separately to clients in the relevant community. *Trustees of Constr. Indus. &*

4    *Laborers' Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006)

5    (interpreting 29 U.S.C. § 1132(g)(2)(D), which allows the court to award an ERISA plan its

6    "reasonable attorney's fees and costs of the action, to be paid by the defendant").[9]

7            The court has reviewed plaintiff's declarations and concludes the following non-

8    taxable costs may reasonably be compensated as attorneys' fees on post-remand matters between

9    December 2014 and September 2015: $524.12 in legal research fees; $86.21 for printing,

10   photocopying, and postage; $4.72 in telephone expenses; and $237.40 in travel costs; in total

11   $852.45. *See* White Decl. Ex. 3, at 1–7; Roberts Decl. Ex. G.

12   VI.     EVIDENTIARY OBJECTIONS AND MOTION TO STRIKE

13           The defendants move to strike most of the declarations submitted in support of

14   Barboza's reply briefing. *See* Mot. Strike, ECF No. 185.  Because the court disregards most of

15   the material in question, to a great degree the motion may be denied as moot.  To the extent the

16   court has considered any of the information in these declarations, the court overrules the

17   defendants' evidentiary objections and finds they suffer no prejudice as a result.

18   /////

19   /////

20   /////

21

22   recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for
     printing and witnesses; (4) Fees for exemplification and the costs of making copies of any
23   materials where the copies are necessarily obtained for use in the case; (5) Docket fees under
     section 1923 of this title; (6) Compensation of court appointed experts, compensation of
24   interpreters, and salaries, fees, expenses, and costs of special interpretation services under section
     1828 of this title.  A bill of costs shall be filed in the case and, upon allowance, included in the
25   judgment or decree."

26          [9] The court notes the defendants' protests that *Redland Insurance* was wrongly decided
     and overlooked binding Circuit precedent.  *See* Opp'n at 18–19 (arguing the *Redland Insurance*
27   panel unintentionally and incorrectly departed from the rule adopted in *Agredano*, 75 F.3d
     at 544).  Be that as it may, *Redland Insurance* binds this court.
28

VII.   <u>CONCLUSION</u>

The motion for attorneys' fees and non-taxable costs is GRANTED IN PART as follows: The court awards $35,530 for White's time, $945 for Springer Ayeni's time, $42,700 for Roberts's time, $962.50 for Foley's time, and $852.45 in costs.

The motion to strike is DENIED IN PART AS MOOT and otherwise DENIED.

This order resolves ECF Nos. 177 and 185.

IT IS SO ORDERED.

DATED:  June 2, 2016.

UNITED STATES DISTRICT JUDGE